**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Lynn McHugh, | No. CV-19-02399-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 11, "Pl. Br."), the Commissioner's Response (Doc. 16, "Def. Br."), Plaintiff's Reply (Doc. 17, "Reply"), and the Administrative Record (Doc. 10, "R."). For the following reasons, the decision is affirmed.

I.   Background

Plaintiff suffers from a number of physical and mental impairments, most notably, post-traumatic stress order ("PTSD") induced by a drive-by shooting of her home in December 2013. (R. at 38.) Plaintiff filed her application for disability benefits on April 22, 2015, alleging disability beginning February 1, 2014 due to asthma, high blood pressure, high cholesterol, PTSD, depression, anxiety, and insomnia. (*Id.* at 15, 186.) Following denial of the application at the initial and reconsideration levels, a hearing before

an administrative law judge ("ALJ") was held on September 13, 2017.  (*Id.* at 15, 32–64.)

On March 28, 2018, the ALJ issued a written decision.  (*Id.* at 15–26.)  The ALJ found that Plaintiff had "severe"[1] impairments of degenerative disc disease, asthma, affective disorder/depression, anxiety disorder, and PTSD.  (*Id.* at 17.)  Despite these impairments, the ALJ found:

> [Plaintiff] has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except: She can occasionally lift and carry twenty-five pounds and frequently lift and carry ten pounds.  She can frequently climb ramps and stairs[;] can occasionally climb ladders[,] ropes[,] and scaffolds[;] and can frequently stoop, crouch, crawl, and kneel.  She should never work around unprotected heights or moving mechanical parts.  She must avoid even moderate exposure to dust, odors, fumes, or pulmonary irritants.  She must avoid concentrated exposure to extreme cold.  ***She would be off task 5% of the time***.

(*Id.* at 19-20, emphasis added.)  Based on this RFC and testimony from a vocational expert ("VE"), the ALJ concluded Plaintiff could perform past relevant work as a surgical technician and medical assistant and therefore was not disabled.  (*Id.* at 25, 61-62.)  Afterward, the Appeals Council denied review and the decision became final.  (*Id.* at 1-3.)

II.     Legal Standard

In reviewing a decision of the Commissioner, the Court reviews only issues raised by the party challenging the decision.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.").  The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

---

[1]     An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

- 2 -

upheld." *Id.* at 674-75. *See also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Such is the case where the error is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so,

the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

III. Analysis

Although Plaintiff asserted during the administrative proceeding that she was disabled due to both physical and mental impairments, she limits her challenges in this action to the ALJ's assessment of her mental impairments. Specifically, Plaintiff argues that (1) the ALJ improperly rejected the opinions of various medical experts concerning her mental limitations and (2) the ALJ failed to incorporate her mental limitations into the RFC. Additionally, Plaintiff argues for the first time that the ALJ was not properly appointed. As explained below, all three arguments lack merit.

### A. **The ALJ Did Not Err When Rejecting The Opinions Of The Examining And Non-Examining Psychologists**

When formulating Plaintiff's RFC, the ALJ considered, but ultimately assigned "little weight" to, the opinions of consultative examining psychologist Dr. Karen Mansfield-Blair and non-examining State agency psychologists Drs. Matthew Meier and James Bludworth. (R. at 23-24, 419-26 [Mansfield-Blair opinion], 72-76 [Meier opinion], 87-93 [Bludworth opinion].) Plaintiff argues that the ALJ impermissibly rejected their opinions "based on nothing more than her own lay judgment." (Pl. Br. at 9.)

The determination of a claimant's RFC is an administrative finding reserved to the Commissioner that is based on "all of the relevant medical and other evidence," including medical opinion evidence. 20 C.F.R. §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2). An ALJ is required to evaluate every medical opinion in the record and assign a weight to each. *Id.* § 404.1527(c). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*

*v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quotation omitted). In evaluating a medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.

### 1. Dr. Mansfield-Blair

Dr. Mansfield-Blair, who examined Plaintiff at the behest of the Commissioner, opined in a report issued in July 2015 that Plaintiff could "understand, remember, and carry out simple one- to three-step instructions." (R. at 425.) Dr. Mansfield-Blair further opined that Plaintiff could "interact appropriately with others," would have "little difficulty adapting" in "an environment in which she can feel safe," and demonstrated "the ability to sustain attention and persist in completing the task at hand." (*Id.*) However, Dr. Mansfield-Blair also opined that Plaintiff had some limitations in the areas of sustained concentration and persistence (specifically, she "had difficulty with tasks that require holding and manipulating verbally presented information") and adapting to change (specifically, she "may have difficulty accurately interpreting and responding to changing environmental contingencies, primarily due to PTSD symptoms"). (*Id.*) Accordingly, Dr. Mansfield-Blair's ultimate opinion was that Plaintiff could only "engage in simple work-like procedures." (*Id.*)

The ALJ gave this opinion "little weight," finding that a limitation to "simple work" was not consistent with Plaintiff's testimony that she was able to maintain a 3.98 GPA in a two-year degree program she began attending in 2016 and Dr. Mansfield-Blair's own findings, which noted only "a few issues with concentration." (*Id.* at 24.) Furthermore, the ALJ found the opinion inconsistent with the mental status examinations performed by Plaintiff's treating providers, which "showed some tearfulness, but . . . revealed few other

deficits in functioning." (*Id.*, citing records.)

The Court finds no error. The ALJ was permitted to consider whether Dr. Mansfield-Blair's opinion was consistent with the record as a whole and the degree of supportability from the source's own findings. *See* 20 C.F.R. § 404.1527(c). Thus, the ALJ's reasons are clear and convincing. They are also supported by substantial evidence. The fact that Plaintiff was able to maintain a near-perfect GPA in her college degree program, which she began only one year after meeting with Dr. Mansfield-Blair, is substantial evidence supportive of the ALJ's conclusion that Plaintiff is capable of more than "simple work" and has little difficulty with concentration.

Notably, Plaintiff herself suggested, when testifying during the hearing, that her mental impairments had improved since she had been evaluated by Dr. Mansfield-Blair in 2015: "I'm still suffering from the post-traumatic stress. I take the medication, but I'm able to handle it more. But now my back is the main issue currently." (R. at 50.) Thus, in her brief to this Court, Plaintiff does not attempt to explain how maintaining a 3.98 college GPA could be construed as consistent with an inability to perform anything but "simple work." Instead, Plaintiff faults the ALJ for "never consider[ing] the possibility of a closed period of disability from February 2014 to 2016." (Pl. Br. at 10-11.)

This argument is unavailing. The ALJ specifically acknowledged the need to assess whether Plaintiff was disabled for any "continuous period of not less than 12 months." (R. at 15.) Additionally, the ALJ did not rely solely on Plaintiff's performance in the degree program when explaining why she assigned little weight to Dr. Mansfield-Blair's opinion—she also noted that Plaintiff's earlier mental status examinations were inconsistent with the limitations assessed by Dr. Mansfield-Blair. For example, records from Plaintiff's family doctor dated December 8, 2014 noted that her "[n]ightmares have tapered" and she was "stable on meds." (*Id.* at 300.) She was "[f]eeling pretty well overall" and had a stable mood. (*Id.* at 297, 293.) Similarly, records from Plaintiff's mental health providers noted mostly normal findings on examination, although she was anxious or depressed at times. (*Id.* at 330–31 [August 2014], 346 [August 2014], 357 [September

2014], 381 [February 2015], 383[February 2015], 387 [March 2015], 411–12 [May 2015].) Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Dr. Mansfield-Blair's opinions.

### 2. Drs. Meier and Bludworth

Drs. Meier and Bludworth, who reviewed Plaintiff's application at the initial and reconsideration levels, respectively, opined that Plaintiff's affective and anxiety-related disorders resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (R. at 72-73 [Dr. Meier, July 2015], 87 [Dr. Bludworth, November 2015].) They further opined that Plaintiff was capable of completing simple tasks and maintaining the minimum level of social interaction required in a work setting. (*Id.* at 75–76, 92.)

The ALJ gave these opinions "little weight." (*Id.* at 23–24.) The ALJ found that although Drs. Meier and Bludworth were well-versed in the assessment of disability and functionality under the relevant laws, (1) they "did not have the opportunity to examine" Plaintiff, (2) they "did not have a longitudinal view of [her] impairments," and (3) "their opinions are inconsistent with some of the objective medical evidence." (*Id.* at 23.) With respect to the final point, the ALJ specifically noted that their opinions were inconsistent with later evidence of additional treatment and mental status examinations that revealed few deficits in mental functioning other than some tearfulness. (*Id.* at 23, citing records.) Moreover, the ALJ noted that their opinions were inconsistent with Plaintiff's testimony that she was able to maintain a 3.98 GPA in her two-year degree program and with mostly normal findings made by Dr. Mansfield-Blair. (*Id.* at 24.)

The Court finds no error. Like Dr. Mansfield-Blair's opinion, these opinions were properly rejected for lack of consistency with the record as a whole. Moreover, because Drs. Meier and Bludworth did not have a treating or examining relationship with Plaintiff, their opinions were not entitled to any greater weight. The ALJ's reasons for rejecting their assessed limitations are clear, convincing, and supported by substantial evidence.

B. **The ALJ Did Not Err By Failing To Include Any Mental Limitations In The RFC**

The second issue presented is whether the ALJ erroneously failed to include any mental limitations in the RFC. (Pl. Br. at 5–8.) Plaintiff argues that because the ALJ identified various mental limitations at steps 2 and 3, the ALJ was obligated to "account for such proven limitations somewhere in [the] RFC" at step 4. (*Id.* at 6.)

This argument lacks merit. Although Plaintiff asserts that "the ALJ gave NO work-related mental limitations in her RFC" (Pl. Br. at 6), the RFC specifically states that Plaintiff "would be off task 5% of the time." (R. at 20.) Additionally, the ALJ provided a reasoned explanation for this level of limitation: "While the record noted therapy for PTSD, mental status examinations generally showed few functional deficits. [Plaintiff] has also been able to attend and nearly complete a two-year degree program during the relevant period, with high marks. This evidence does not support more than a minimal limitation of being off task a portion of the time." (*Id.* at 24.)

Given this backdrop, there is no need to resolve the parties' dispute over whether it might be permissible, in a different case, for an ALJ to decline to include any mental limitations in an RFC despite finding, at steps 2 and 3, that the claimant is suffering from mental impairments. That didn't happen here.[2]

C. **Plaintiff's Appointments Clause Challenge Is Forfeited**

The final issue presented is whether Plaintiff is entitled to a remand for a new hearing before a different ALJ because the ALJ who adjudicated her case was not constitutionally appointed at the time of her hearing. (Pl. Br. at 11–16.)

Under the Appointments Clause of the United States Constitution, the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for,

---

[2] The Court also rejects Plaintiff's undeveloped assertion that an RFC limitation of being off-task 5% of the time is effectively "not a limitation" at all. (Pl. Br. at 6.) Plaintiff cites no cases in support of this assertion.

1   and which shall be established by law: but the Congress may by law vest the appointment
2   of such inferior officers, as they think proper, in the President alone, in the courts of law,
3   or in the heads of departments." *See* U.S. Const. art. II, § 2, cl. 2.  In other words, the
4   Constitution creates a distinction between "Officers of the United States," who can only be
5   appointed by "the President, a court of law, or a head of department," and mere "employees
6   of the Federal Government," as to whom "the Appointments Clause cares not a whit about
7   who named them."  *Lucia v. SEC*, 138 S.Ct. 2044, 2051 (2018).  In *Lucia*, the Supreme
8   Court concluded that ALJs employed by the Securities and Exchange Commission qualify
9   as "officers" for purposes of the Appointments Clause.  *Id.* at 2051-55.  The Court further
10  concluded that, because the ALJ who presided over Mr. Lucia's administrative proceeding
11  lacked "the kind of appointment the Clause requires," and because Mr. Lucia had presented
12  a "timely challenge" by "contest[ing] the validity of [the ALJ's] appointment before the
13  Commission, and continu[ing to] press[] that claim in the Court of Appeals and this Court,"
14  Mr. Lucia was entitled to a new hearing before a properly appointed ALJ.  *Id.* at 2055-56.

15  Here, the Commissioner does not dispute (Def. Br. at 18 n.15) that the ALJ who presided over Plaintiff's case qualifies as an "officer" yet was not appointed in the manner required by the Appointments Clause.  Nevertheless, the Commissioner argues that Plaintiff is not entitled to a remand because, unlike the petitioner in *Lucia*, she forfeited any Appointments Clause claim by failing to raise it during the administrative proceedings. (*Id.* at 14-22.)  The Commissioner further notes that, "in the wake of *Lucia*, 37 out of the 39 district courts that have decided the issue have rejected attacks on the validity of an SSA ALJ's appointment where the claimant failed to make the constitutional challenge at the administrative level." (*Id.* at 18-19.)

The Court agrees with the Commissioner and concludes, consistent with the conclusions reached by the overwhelming majority of other courts to have addressed this issue, that Plaintiff forfeited her Appointments Clause claim by failing to raise it at the ALJ level.  In *Meanel v. Apfel,* 172 F.3d 1111 (9th Cir. 1999), the Ninth Circuit held that, "at least when claimants are represented by counsel, they must raise all issues and evidence *at*

*their administrative hearings* in order to preserve them on appeal." *Id.* at 1115 (emphasis added).  Although the Supreme Court's subsequent decision in *Sims v. Apfel*, 530 U.S. 103 (2000), which held that Social Security claimants need not raise issues before the Appeals Council in order to preserve them for judicial review, may have temporarily raised some questions about the scope and continued validity of *Meanel*, the Ninth Circuit resolved those questions in 2017 by clarifying that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review" and that "*Meanel* therefore remains binding on this court with respect to proceedings before an ALJ." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).  Therefore, *Meanel*'s ALJ-level preservation requirement remains the law in the Ninth Circuit.  Accordingly, because Plaintiff was represented by counsel during her administrative hearing and failed to raise an Appointments Clause challenge during that hearing, she has forfeited the challenge here.[3]

Plaintiff's arguments to the contrary (Pl. Br. at 11-16; Reply at 5-8) are unavailing.  First, Plaintiff argues that the SSA's "own officially stated policy," known as "SSR 19-1p," "unambiguously provides that a claimant need not raise a *Lucia* Appointments Clause challenge at the ALJ level in order to obtain relief on that issue." (Pl. Br. at 13.)  Yet SSR 19-1p actually provides that such challenges must be "timely-raised."  2019 WL 1324866,

---

[3] *See, e.g., Smith v. Comm'r of Soc. Sec. Admin.*, 2020 WL 2768697, *15 (D. Ariz. 2020) ("Claimant's Appointments Clause challenge here is untimely for failure to raise the issue at her administrative hearing."); *Latosha N. v. Saul*, 2020 WL 1853310, *8 (C.D. Cal. 2020) ("[P]laintiff forfeited her challenge to the validity of the ALJ's appointment here when she did not raise her challenge at the administrative level."); *Wendy R. v. Comm'r, Soc. Sec. Admin.*, 2020 WL 1172694, *6 (D. Or. 2020) ("[B]ecause plaintiff failed to timely raise her Appointments Clause challenge at her administrative hearing and before the Appeals Council, the Court finds she has forfeited this claim."); *Montijo v. Comm'r of Soc. Sec. Admin.*, 2020 WL 813771, *5 (D. Ariz. 2020) ("Because Plaintiff failed to timely challenge the constitutional validity of the ALJ's appointment, the Court rejects Plaintiff's final argument for remand."); *Younger v. Comm'r of Soc. Sec. Admin.*, 2020 WL 57814, *5 (D. Ariz. 2020) ("Though it is a close question, the Court opts to follow suit with the other district courts in this circuit and finds Plaintiff forfeited her [Appointments Clause] argument by failing to raise it before the ALJ."); *James A. v. Saul*, 2019 WL 4600940, *15 (N.D. Cal. 2019) ("[Under *Meanel*], claimants represented by counsel must raise all issues at their administrative hearings to preserve issues on appeal.  Thus, Plaintiff forfeited his claim that the ALJ was not properly appointed under the Constitution for purposes of federal court review.").

\*3 (Mar. 15, 2019). It further defines a "timely-raised" challenge as one in which a claimant "raises before us (*either at the Appeals Council level, or previously had raised at the ALJ level*) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case." *Id.* (emphasis added). Here, of course, Plaintiff did not raise her challenge at any point during the administrative proceedings. Thus, even under SSR 19-1p, Plaintiff is not entitled to relief.

Second, Plaintiff argues that because the petitioner in *Lucia* "never raised an Appointments Clause challenge at the ALJ level," it follows that her failure to raise the issue at the ALJ level can't be considered a forfeiture. (Pl. Br. at 14.) But *Lucia* does not specifically say that the petitioner failed to raise an Appointments Clause challenge at the ALJ level—it is silent on whether the argument was raised at the ALJ level and merely notes that it was raised in the petitioner's appeal to the SEC. 138 S.Ct. at 2049-50. Thus, *Lucia*'s later statement that the petitioner's challenge was "timely" because he "contested the validity of [the ALJ's] appointment before the Commission," *id.* at 2055, cannot be fairly construed as a holding that ALJ-level challenges aren't required for preservation purposes. That issue simply wasn't before the Court. At a minimum, *Lucia*'s statements on this point are too ambiguous to have implicitly overruled *Meanel*'s longstanding requirement of ALJ-level preservation. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (to implicitly overrule a Ninth Circuit decision, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

Third, Plaintiff argues that it would be inequitable to apply a more severe forfeiture rule here than was applied in *Lucia* because Social Security claimants, unlike litigants before the SEC, are often poor and sick and Social Security proceedings, unlike SEC proceedings, are supposed to be non-adversarial and informal. (Pl. Br. at 14, 16.) Plaintiff even accuses the Social Security Administration of "intentionally deceiv[ing]" her by characterizing her proceeding as informal. (*Id.* at 16.) These arguments lack merit. As noted, *Lucia* requires a claimant seeking to raise an Appointments Clause challenge to

"timely" raise that challenge during the administrative process and Plaintiff concedes she never raised such a claim during her process (even though *Lucia* was decided before her Appeals Council process was complete). Nor was Plaintiff somehow deceived—there is no suggestion, let alone evidence, that Plaintiff was ever affirmatively told she didn't need to raise all possible claims during the administrative process. Finally, to the extent Plaintiff wishes to raise a policy-based disagreement with *Meandel*'s exhaustion requirement, this Court cannot disregard binding Circuit law based on such arguments.

Finally, Plaintiff cites several Supreme Court decisions, including *Sims*, in support of her belief that forfeiture rules cannot be applied in this circumstance. (Pl. Br. at 15.) But as noted, the Ninth Circuit has clarified that *Sims* did not overrule *Meandel* concerning the need for ALJ-level preservation. *Shaibi*, 883 F.3d at 1109. Additionally, the Ninth Circuit has issued post-*Lucia* decisions confirming that Appointments Clause challenges may be forfeited. *Kabani & Co., Inc. v. SEC*, 733 Fed. App'x 918, 919 (9th Cir. 2018) (concluding, post-*Lucia*, that "petitioners forfeited their Appointments Clause claim by failing to raise it . . . before the agency").

**ACCORDINGLY, IT IS ORDERED** that the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this case.

Dated this 17th day of July, 2020.

Dominic W. Lanza
United States District Judge

- 12 -